UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO: 1:19-cv-00031-MOC

| | |
|---|---|
| KENNETH WHITFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| ANDREW M. SAUL, ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 11). This matter has been fully briefed and is ripe for review. Having considered the motions and reviewed the pleadings, the Court enters the following Order.

**I.     ADMINISTRATIVE HISTORY**

On July 4, 2015, Plaintiff Kenneth Whitfield concurrently filed applications for disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act (the "Act"). (Tr. 44). In both applications, Plaintiff alleged he became disabled beginning June 30, 2009. (Id.). Plaintiff's claims were denied initially and upon reconsideration, so he filed a request for a hearing before an Administrative Law Judge ("ALJ"). On August 18, 2017, ALJ Colin Fritz held a hearing for de novo consideration of Plaintiff's claims. (Id.). Thereafter, on February 15, 2018, the ALJ issued a decision concluding Plaintiff was not disabled within the meaning of the Act. (Tr. 54). The Appeals Council denied Plaintiff's request for review on November 30, 2018, rendering the ALJ's decision a final decision reviewable by this Court. (Tr. 1). Plaintiff exhausted all available administrative remedies, so this case is ripe for judicial

1

review, pursuant to 42 U.S.C. § 405(g).

## II.  FACTUAL BACKGROUND

The Court adopts and incorporates the ALJ's factual findings as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.  STANDARD OF REVIEW

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

In reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Federal courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (citation and alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (citation and alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis

for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (recognizing courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

## IV. SUBSTANTIAL EVIDENCE

The Court has closely read the transcript of Plaintiff's hearing, the record exhibits, and the ALJ's decision. As explained below, the Court finds that the record contains an insufficient basis to conduct meaningful substantial-basis review. As such, the Court remands so the ALJ can adequately explain his reasoning in the first instance.

### A. SEQUENTIAL EVALUATION

The Act defines "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries its burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

### B. THE ADMINISTRATIVE DECISION

The issue before the ALJ was whether Plaintiff was disabled from the alleged onset date to the date of his decision. Using the sequential review process, the ALJ determined at step five that Plaintiff was not disabled within the meaning of the Act.

To begin, at step one, the ALJ recognized that Plaintiff had not engaged in substantial gainful activity since June 30, 2009, the alleged onset set of disability. (Tr. 46). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: depression, bipolar disorder, anxiety disorder, and post-traumatic stress disorder. (Id.). He also determined that Plaintiff suffered from three non-severe impairments: substance abuse, hypertension, and low testosterone. (Tr. 47). Next, at step three, the ALJ decided Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id.).

The ALJ then found Plaintiff had the residual functional capacity to perform medium work,

4

as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he could: occasionally climb ladders, ropes and scaffolds; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and occasionally be exposed to hazards associated with unprotected dangerous machinery or unprotected heights. (Tr. 48). The ALJ also found Plaintiff could concentrate, persist, and maintain pace sufficient to understand, remember, and carry out simple, routine tasks in a low-stress work environment, involving simple work-related decisions, occasional independent judgment skills, and occasional workplace changes. (Id.). Additionally, the ALJ found Plaintiff could perform jobs where he is largely isolated from the general public—dealing with data and things rather than people—and jobs where his work duties could be completed independently from coworkers. Even so, the ALJ found that physical isolation was not required and Plaintiff could respond appropriately to reasonable and customary supervision. (Id.).

Based on these findings, the ALJ concluded at step four that Plaintiff was unable to perform past relevant work. (Tr. 52). Still, at step five, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy, including: (1) box bender, (2) food service worker, and (3) industrial cleaner. (Tr. 53). Because such jobs existed, the ALJ held that Plaintiff was not disabled within the meaning of the Act. (Tr. 54).

### C. DISCUSSION

Plaintiff contends the ALJ erred when evaluating his disability status because the ALJ failed to "fully articulate" why and how he discounted the medical opinion of Plaintiff's Licensed Professional Counselor, Mary Ricketson. (Doc. No. 10, p. 5). The Court agrees. Because the ALJ failed to build the requisite logical bridge between the evidence and his ultimate conclusion,

the Court will remand this case to the ALJ for reconsideration.[1]

When evaluating a claimant's disability, the ALJ must "consider all of the available evidence in the individual's case record," including evidence from "acceptable medical sources" and "other health care providers who are not 'acceptable medical sources.'" SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006).[2] Licensed Professional Counselors are not acceptable medical sources. See id. (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and, for limited purposes, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists); see, e.g., Alford v. Saul, No. 1:18-cv-216, 2019 WL 3502958, at *5 (M.D.N.C. Aug. 1, 2019); Tena W. v. Berryhill, No. 7:17-cv-371, 2019 WL 363623, at *6 (W.D. Va. Jan. 7, 2019), report and recommendation adopted, 2019 WL 361138 (Jan. 29, 2019). Thus, their opinions "cannot establish the existence of a medically determinable impairment." SSR 06-03p, 2006 WL 2329939, at *2. Still, they "may provide insight into the severity of the [claimant's] impairment(s) and how it affects the individual's ability to function." Id. Accordingly, such opinions are entitled to consideration.

Generally, the ALJ "should explain the weight given to opinions from [such other medical] sources [to] ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). A satisfactory explanation "must both identify evidence that

---

[1] Plaintiff also contends the ALJ erred (1) by "affording greater weight" to non-examining sources than to Ricketson, (Doc. No. 10, p. 19), and (2) by finding Plaintiff's symptom testimony "inconsistent [with] the medical evidence [in the] record," (Tr. 50). Because the ALJ will reconsider the medical evidence on remand, the Court declines to consider those contentions.

[2] SSR 06-03p was rescinded effective March 27, 2017 for claims filed on or after that date. See 82 Fed. Reg. 5,844 (2017). Plaintiff filed his concurrent claims in July 2015, so SSR 06-03p and related regulations still apply to his disability determination.

supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018). Furthermore, a satisfactory explanation must "consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (citation omitted).

At the time of the disability hearing, Ricketson had been treating Plaintiff for over a year and a half for auditory and visual hallucinations, persistent anxiety, and depression. (Tr. 1180). As such, she submitted an opinion on the severity of Plaintiff's impairments to assist the ALJ with his disability determination. That opinion consisted of two components: (1) a three-page "Medical Source Statement," (Tr. 1149–52), and (2) about fifty pages of handwritten "Office Treatment Records," which were drafted over the course of treatment, (Tr. 1177–1226).

Ricketson's Medical Source Statement listed Plaintiff's psychiatric diagnoses, then checked boxes to identify his symptoms and "'marked impairment[s].'" (Tr. 1150–52). Pertinent here, Ricketson checked boxes to indicate Plaintiff suffered from several marked impairments, including an inability to: "maintain attention and concentration for extended periods (two hour segments)"; "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances"; "work in coordination with or in proximity to others without being distracted"; "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "interact appropriately with the general public"; "accept instructions and respond appropriately to criticism from supervisors"; "get along with coworkers without unduly distracting them or exhibiting behavioral extremes"; and "respond appropriately to changes in the work setting." (Tr. 1152).

7

Ricketson's Office Treatment Records supplemented this Statement. In those records, she documented Plaintiff's progress over the course of treatment. (Tr. 1179–80). As late as August 2017, she opined that Plaintiff continued to struggle with auditory and visual hallucinations and believed that his thoughts were on a computer. (Id.). Furthermore, she opined Plaintiff was too anxious and distracted to focus for very long. (Id.). These symptoms continued even while Plaintiff adhered to treatment and attended Alcoholics Anonymous meetings. (Id.).

Reviewing Ricketson's Statement and Record, the ALJ afforded "some weight" to her opinion, due to her "longitudinal" treatment of Plaintiff. (Tr. 51). Still, he underscored "only some weight [was] given," because (1) Ricketson provided "insufficient treatment notes . . . to substantiate her opinion," (2) Ricketson is not a vocational expert, and (3) because "conclusions of disability are reserved solely to the Commissioner." (Tr. 51–52). Moreover, the ALJ explained that Ricketson's Statement was "more notable for boxes not checked." (Id.). The ALJ otherwise provided virtually no explanation as to how and why he discounted Ricketson's opinion.[3]

The ALJ's explanation fails to adequately explain both <u>how</u> and <u>why</u> he discounted Ricketson's opinion. First, the ALJ failed to explain how he limited Ricketson's opinion to "some weight." As the Fourth Circuit has admonished, explanations that merely "explain . . . the varying degrees of weight he gave to differing opinions [to claimant's] conditions and limitations" are too "conclusory" for "meaningful substantial-evidence review." Monroe v. Colvin, 826 F.3d 176, 191 (4th Cir. 2016). This is because such barebones explanations fail to elucidate "what aspects of that opinion" are persuasive. Woods, 888 F.3d at 695. Here, did the ALJ discredit Ricketson's observed symptoms? Or did he disagree with her assessment of impairment severity? Without

---

[3] The ALJ suggested Ricketson's "statement appears to be authored and selectively edited by the claimant's representative." (Tr. 51). The ALJ identified no evidence supporting this view, and the Government essentially abandoned this justification on review. (Doc. No. 12, p. 12).

8

more, it is impossible for the Court to know what aspects of the opinion were persuasive to the ALJ. Without this critical information, the Court cannot conduct meaningful review.

The ALJ's failure to explain precisely how he discounted Ricketson's opinion is sufficient to warrant remand. Still, Plaintiff correctly identifies other shortcomings in the discussion of Ricketson's opinion. Because these issues may recur, the Court addresses them now to provide the ALJ with guidance on remand. See id. at 694.

The ALJ's proffered reasons fail to sufficiently articulate why he discounted Ricketson's opinion. Consider first the ALJ's finding that the "record contains insufficient treatment notes from [her] to substantiate her opinion." (Tr. 51). It is unlikely that the ALJ meant the notes were "insufficient" as a matter of paucity—Ricketson submitted over fifty pages of Records spanning the course of about a year and a half. Such quantity does not necessarily equate to quality, and these notes may lack critical information that is required to "substantiate" Ricketson's findings. But the ALJ has failed to explain precisely how Ricketson's extensive notes were "insufficient." Without this information, the Court cannot determine whether the ALJ's explanation is supported by substantial evidence.

The ALJ also failed to explain why Ricketson's Medical Source Statement was "more notable for boxes not checked." (Tr. 51). In fact, the parties have argued two alternative readings of this opaque explanation on review. For his part, Plaintiff suggests this explanation demonstrates the ALJ errantly focused on his abilities while downplaying his disabilities. (Doc. No. 10, p. 17–18). By contrast, the Government thinks the ALJ meant that failing to check some boxes is "internally inconsistent with a finding of marked limitations in the same or similar [boxes]." (Doc. No. 12, p. 14). Both readings appear plausible, and the ALJ has failed to provide enough context for the Court to know which reading is correct. Again, without more, the Court cannot evaluate

9

precisely why the ALJ discounted Ricketson's opinion.

Finally, the ALJ discounted Ricketson's opinion because she is not a vocational expert and because disability conclusions are reserved for the ALJ. The Government essentially concedes these reasons are insufficient to justify discounting Ricketson's opinion. (Doc. No. 12, p. 12). With good reason. SSR 06-03p explains "other source" evidence "may provide insight into the severity of the [claimant's] impairment(s) and how it affects the individual's ability to function." 2006 WL 2329939, at *2. Further, SSR 96-5p provides that "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and that the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." 1996 WL 374183, at *1 (July 2, 1996) (emphases added).[4] Put together, these rulings make clear that an opinion's status as "other source" evidence, standing alone, "is not a basis to discredit [its] records and findings altogether[.]" Pate v. Berryhill, No. 5:16-cv-00864-D, 2018 WL 577998, at *9 (E.D.N.C. Jan. 10, 2018), adopted, No. 5:16-cv-864-D, 2018 WL 576833 (Jan. 26, 2018); see also Alford, 2019 WL 3502958, at *6 n.8 (M.D.N.C. Aug. 1, 2019) (collecting cases); Stevens v. Colvin, No. 1:14-cv-350, 2015 WL 5254299, at *6 (M.D.N.C. Sept. 9, 2015) (holding an ALJ erred by assigning an opinion "partial weight" because of its "other source" status and because "the ultimate issue of disability [is] reserved to the Commissioner").

## V. CONCLUSION

For the reasons stated above, the Court will remand this case to the ALJ to reconsider Plaintiff's disability status under the Act.

---

[4] Like SSR 06-03p, SSR 96-5p was rescinded on March 27, 2017. See 2017 WL 3928298, at *1. That ruling applies to Plaintiff's claim because he filed his claim before rescission.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **GRANTED** and the Defendant's Motion for Summary Judgment (Doc. No. 11) is **DENIED**.  Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED,** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.  A judgment shall be entered simultaneously herewith.

Signed: September 23, 2019

Max O. Cogburn Jr.
United States District Judge